IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KATHERINE RINDERLE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> COBB COUNTY SCHOOL DISTRICT, *et al.*, <br><br> Defendants. | Civil Action No. 1:24-cv-00656 |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO STAY**

Defendants ask this Court to deny Plaintiffs' Motion to Stay [Doc. 95] for the reasons below:

**INTRODUCTION**

Plaintiffs ask this Court to halt these proceedings for nearly a year based on doctrines that do not apply and arguments that misstate the law. Only months ago, they opposed a stay as an unnecessary delay. Now, faced with the prospect of dismissal based on preclusion, Plaintiffs reverse course and invoke *England* and *Fields* in a vain effort to "reserve" claims that have been decided. But neither case supports their position. *England* does not permit relitigation of federal claims already adjudicated by a state court, and *Fields* applies only when federal law imposes an exhaustion requirement—which is not the case here.

What Plaintiffs seek is not an orderly resolution of their claims but procedural confusion designed to give them a second bite at the apple. Because preclusion forecloses their due process challenge, and no exhaustion mandate exists to justify a reservation, their request for a stay is just a needless delay tactic. It should be denied.

## BACKGROUND

Two years ago, Rinderle read *My Shadow is Purple*—a book addressing gender fluidity—to her fifth-grade class. [Doc. 26 ¶ 72]. She did so without seeking approval from school administrators and without providing parents notice or an opportunity to opt out. After parents lodged complaints, CCSD opened an investigation into Rinderle's conduct. [*Id.* ¶ 95]. CCSD later charged Rinderle with violating CCSD policies IKB-R and IFAA-R ("Policies"), which prohibit teachers from promoting one side of a "controversial" or "divisive" issue. [Doc. 26-1 at 1]. The Policies also safeguard parents' rights to guide their children's moral upbringing by requiring teachers to give notice and an opt-out option before introducing supplemental materials on "sensitive" topics. [*Id.*; *see also* Doc. 26-2 at 4].

Rinderle challenged her termination under Georgia's Fair Dismissal Act ("FDA"). At the FDA hearing, Rinderle argued that CCSD's enforcement of the Policies against her violated her rights under due process and Title IX. [Doc. 42-1 at

24].[1] She claimed that the Policies were too vague to provide fair notice about what conduct is prohibited. [*Id.*] She also claimed that CCSD's investigation was motivated by anti-LGBTQ bias and by her advocacy for LGBTQ students. [*Id.* at 190, 725, 732.] The Cobb County Board of Education rejected her arguments and terminated her employment. [Doc. 26 ¶ 129.]

Rinderle appealed her termination to the State Board of Education ("SBOE"). [Doc. 26 ¶ 131]. In that appeal, she pressed her due process claim, contending that the Policies were unconstitutionally vague. [Doc. 87-1 at 19-25.] She did not, however, brief her Title IX claim, instead stating she was reserving that claim for "potential future appeals and litigation." [*See id.* at 17 n. 8.] The SBOE upheld her dismissal. [Doc. 26 ¶ 131].

Rinderle then appealed to the Cobb County Superior Court. [Doc. 26 ¶ 131.] As before, she pursued her due process vagueness claim. [Doc. 87-2 at 23-30.] Her superior court brief expressly "reserved" other federal claims but consciously omitted due process from that reservation:

> [1] For purposes of this appeal, Rinderle does not brief her claims under the First Amendment, Title IX, or the Equal Protection Clause, but she asserts her rights and does not waive any claims or defenses for purposes of future appeals or other litigation.

---

[1] For ease of reference, Defendants cite the ECF file-stamped page numbers of the FDA hearing transcript rather than the transcript's original page numbers.

[Doc. 87-2 at 2 n.1.]

The superior court rejected her due process claim and concluded that the Policies were not unconstitutionally vague. [Doc. 87-3 at 14-17.]. As the court found, the terms Rinderle challenged—such as "controversial," "sensitive," "divisive," "appropriate," "social," "political," "religious," and "partisan"—are "words of common usage and understanding that people of ordinary intelligence understand." [Id. at 16.] The court also held that the Policies were not unconstitutionally vague as applied to *My Shadow Is Purple*, reasoning that "[q]uestions related to gender and gender identity—in particular, whether gender is binary or non-binary—are some of our most hotly debated cultural and political topics." [Id. at 17.]

Rinderle appealed the superior court's judgment to the Georgia Court of Appeals. [Docs. 81-4, 95-1.]. But she does not seek appellate review of either her due process claim or her Title IX claim. [Doc. 81-4 at 5 n. 1.] That appeal remains pending.

In the meantime, Defendants moved to dismiss Plaintiffs' procedural due process and Title IX claims based on claim and issue preclusion. [Doc. 87.] Plaintiffs opposed that motion, arguing, in part, that they "reserved" all their federal claims during the state court FDA proceedings, thereby shielding them from preclusion. [*See* Doc. 92 at 14-17.] In a transparent effort to bolster that argument, Plaintiffs

now move for a stay. This Court should deny their motion for the following reasons.

## ARGUMENT & CITATION TO AUTHORITY

**I.   This Court should deny Plaintiffs' request for a stay.**

Earlier this year, Plaintiffs opposed a stay requested by Defendants, insisting it "would unnecessarily delay the adjudication of Plaintiffs' claims if granted." [Doc. 76 at 2.] They now seek a stay of their own—one that will grind this case to halt for nearly a year until Rinderle's FDA appeal runs its course. At the same time, Plaintiffs concede a stay is not necessary. They admit a "stay is not required given the different parties, claims, and remedies between this case and the FDA appeal." [Doc. 95 at 5 n. 4.] They also acknowledge that the parallel FDA proceedings involve only state-law issues not present here. [*Id.* at 7.] And they do not explain how an appellate decision in the state-law FDA appeal will impede the advancement of this case substantively or practically—or vice versa.

So why all of a sudden do Plaintiffs want to push pause on this case? They give two reasons, neither of which is compelling: (1) "to facilitate orderly discovery" and (2) "to remain consistent with Rinderle's express reservation of rights in the state proceeding." [*Id.* at 2.] Plaintiffs treat the first reason like an afterthought. They don't elaborate on it. And they ignore the fact that before the Court are two motions to dismiss, which would obviate the need for discovery if granted. No more needs to be said on that point.

-5-

Plaintiffs instead focus on the second reason. Citing *England v. Louisiana State Bd. of Med. Exam'rs*, 375 U.S. 411 (1964), *Fields v. Sarasota Manatee Airport Auth.*, 953 F.2d 1299 (11th Cir. 1992), Plaintiffs insist a stay is prudent—but not necessary—to "properly reserve their right to a federal forum." [Doc. 95 at 4-5.] In other words, Plaintiffs believe asking for a stay is a procedural component of what they call a "*England/Fields* reservation."

This argument lacks merit for two reasons. **First**, the Supreme Court has consistently held that *England* does not permit a litigant, like Plaintiffs here, to seek federal court review of a constitutional claim that has been decided by a state court. **Second**, *Fields* makes clear that a plaintiff may reserve federal claims for litigation in a federal forum only in two circumstances: (1) the plaintiff wishes to pursue a federal counterclaim in a nonremovable state case, and (2) when *federal law* imposes an exhaustion requirement as a precondition for suing in federal court. 953 F.2d at 1306. This case meets neither condition.

### A. *England* does not permit a plaintiff to reserve a claim that has already been decided by a state court.

Neither *England* nor *Fields* covers the situation Plaintiffs find themselves in—asserting a § 1983 claim in federal court that is identical to one a state court adversely decided months earlier. Instead, *England* and the line of claim-reservation cases that followed it make a key principle beyond dispute: If a party presents their federal claim to a state court, and the state court decides it, then the party forfeits the

right to have that same claim decided in federal court.

In *England*, the Supreme Court established that plaintiffs may return to federal court after the district court invokes *Pullman* abstention, so long as they reserve their federal claims and limit the state proceedings to the antecedent state-law issue. *See* 375 U.S. at 413, 419; *see also Prapti, Inc. v. City of Hampton, Georgia,* No. 1:08-CV-0250-JOF, 2008 WL 11411398, at *4 n. 1 (N.D. Ga. June 11, 2008) ("*England* is fundamentally about abstention and a party's desire to have federal courts rule on issues of federal law."). There, a group of recent chiropractic school graduates challenged the educational requirements under Louisiana's Medical Practice Act. *England*, 375 U.S. at 412. The district court abstained to let Louisiana's state courts decide whether the statute applied to chiropractors. *Id.* at 413. But the chiropractors went further, asking the state court also to consider their federal constitutional challenge to the Act. *Id.* The state court held the Act did not violate the constitution. *Id.* at 414.

When the state proceedings ended, the chiropractors returned to federal court, only to face a motion to dismiss based on res judicata, which the district court granted. *Id.* The chiropractors directly appealed the dismissal to the Supreme Court. *Id.* at 414-15. The Court announced that a party preserves the right to return to federal court by making clear on the state record that they are only raising their federal claims provisionally and intend to return to federal court if needed. *Id.* at 421.

That right is lost, however, if the party goes further and fully litigates the federal issues in state court. *Id.* Even though the chiropractors litigated their claim in state court rather than reserve it, the Court still held that they could pursue their federal claims in federal court despite the prior state court judgment. *Id.*

At first glance, *England* would seem to support Plaintiffs' right to have their § 1983 procedural due process claims decided by this Court even after the Cobb County Superior Court adjudicated that claim on the merits. But *England* explained that under its reasoning, it normally would have affirmed the district court's decision to dismiss the chiropractor's federal suit. 375 U.S. at 422. But the Court made an exception because the chiropractors reasonably, though mistakenly, believed that prior precedent required them to litigate their federal claims in state court. *Id.* Since some authority supported that belief, the Court decided it would be unfair to penalize them. *See id.* As a result, the dismissal was reversed and the case sent back for further proceedings. *Id.* at 422-23.

Yet *England* clarified that future litigants would not enjoy the same leniency shown the chiropractors and that final decisions by state courts on federal issues would receive preclusive effect. The Court "explicitly" held that "if a party freely and without reservation submits his federal claims for decision by the state courts, litigates them there, and has them decided there, then…he has elected to forgo his right to return to the District Court." *Id.* at 419. The Court later interpreted that

language to mean "that the effective reservation of a federal claim was dependent on the condition that plaintiffs take no action to broaden the scope of the state court's review beyond decision of the antecedent state-law issue." *San Remo Hotel, L.P. v. City & Cnty. of San Francisco, Cal.*, 545 U.S. 323, 340 (2005).

Several post-*England* decisions leave no doubt about the preclusive effect of state court decisions on federal claims. In *Allen v. McCurry*, the Court held that when an issue is actually litigated in state court, it carries the same preclusive effect in a later federal §1983 case as it would in the state's own courts. 449 U.S. 90, 103-104 (1980). Four years later, the Court confirmed that § 1983 "does not override state preclusion law and guarantee petitioner a right to proceed to judgment in state court on her state claims and then turn to federal court for adjudication of her federal claims." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 85 (1984). And in *San Remo Hotel*, the Court clarified that "[t]he purpose of the *England* reservation is not to grant plaintiffs a second bite at the apple in their forum of choice." 545 U.S. at 346. Rather, once an issue is actually decided in a valid state-court judgment, a plaintiff is barred from relitigating the same federal claim in federal court—even if the plaintiff was involuntarily in state court due to "statute or prudential rules." *Id.* at 342. *Fields* recognized this rule, too. *See* 953 F.2d at 1303 ("if a state court litigant raises his federal claims in state court, he may not relitigate them in federal court in a section 1983 action.").

The upshot of all this is that the main reason Plaintiffs seek a stay rests on a misunderstanding of caselaw. The reservation doctrine recognized in *England* was never intended to allow plaintiffs to relitigate federal claims already adjudicated by a state court or to hold federal litigation in limbo while a party tests out unrelated theories in parallel state appeals. To the contrary, the Supreme Court has unequivocally said that once a litigant submits a federal claim to a state court and receives a final judgment, the principles of claim and issue preclusion apply with full force in federal court. *San Remo Hotel*, 545 U.S. at 342; *Migra*, 465 U.S. at 84–85; *Allen*, 449 U.S. at 103–04. Plaintiffs cannot escape the superior court's rejection of their due process challenge by recasting it as a live issue here and asking for a year-long postponement of this litigation. *See Mod., Inc. v. Fla., Dep't of Transp.*, 381 F. Supp. 2d 1331, 1346 (M.D. Fla. 2004) ("a plaintiff cannot wait to suffer an adverse ruling in state court before it alerts Defendants of its intentions and thus receive a second bite at the apple."). Because the due process issue is precluded, Plaintiffs' reliance on *England* provides no basis for a stay, and their motion should be denied.

### B. *Fields* is inapplicable because this case is not subject to a federal exhaustion requirement.

Plaintiffs' request for a stay also misapplies *Fields*. There, the Eleventh Circuit considered whether a litigant "involuntarily" forced into state court to satisfy a federal exhaustion requirement for a takings claim can reserve his federal claims

-10-

for adjudication in a federal forum. 953 F.2d 1299, 1304. Relying on a Fifth Circuit decision, *Jennings v. Caddo Parish Sch. Bd.*, 531 F.2d 1331 (5th Cir.), *Fields* held that a prospective federal litigant can "reserve their right to a federal court hearing for some federal constitutional claims merely by making a formal reservation in the state court proceedings of their intent to bring their federal claims in a federal court should the state court, applying state law, find adversely to them." 953 F.2d at 1305.

To begin, it is doubtful that *Fields* applies here at all. The purpose of the opinion was to address the interplay between the full faith and credit statute, 28 U.S.C. § 1738, and *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnston City*, 473 U.S. 172, 195 (1985), which held that takings claims are not ripe until a state fails "to provide adequate compensation for the taking." In other words, *Fields* considered a jurisdictional problem unique to takings claims. It did not create an all-purpose reservation rule for litigants participating in parallel federal and state litigation. And Defendants found no decision from this circuit recognizing an effective *Fields/Jennings* reservation outside the takings context.[2]

---

[2] Defendants also doubt *Fields* is still good law. The utility of the *Fields*/*Jennings* reservation rests on the presumption that plaintiffs must exhaust their state law remedies to comply with *Williamson County* before filing in federal court. But the Supreme Court overruled *Williamson County*. *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 206 (2019) ("The state-litigation requirement of *Williamson County* is overruled. A property owner may bring a takings claim under § 1983 upon the taking of his property without just compensation by a local government."). With *Williamson County's* exhaustion requirement now eliminated, the core rationale behind the *Fields/Jennings* reservation no longer exists. Now,

Even if *Fields* applies beyond the takings context, it still emphasized that litigants can only reserve federal claims in very limited circumstances. The court noted that before a party may exercise a reservation, two conditions must be met: "First, the would-be federal court litigant must be precluded from filing his or her suit in federal court in the first instance, and second, the would-be federal court litigant must be in state court 'involuntarily.'" 953 F.2d at 1306 (internal citations omitted). *Fields* envisioned only two scenarios in which both conditions are met: "(1) when a defendant in a non-removable state court action wishes to pursue a federal law counterclaim, and (2) when *federal law* imposes an exhaustion requirement upon a would-be federal court litigant as a precondition of bringing his federal claim in federal court." *Id.* (emphasis added). Because federal law imposed a state law exhaustion requirement on the plaintiff's federal takings claims, *Fields* held that he could invoke a *Jennings* reservation. *Id.*

Here, on the other hand, federal law imposes no exhaustion mandate.³ Although Rinderle is litigating a parallel FDA case that arises out the same nucleus of facts from which her federal claims stem, no law requires her (or any of the

---

plaintiffs need not exhaust state remedies before proceeding with their takings claims in federal court, making *Fields* at best obsolete and at worst a dead letter.

³ Plaintiffs do not assert a federal counterclaim here, so this brief does not discuss that application of *Fields* in that context. That aside, that portion of *Fields* is dicta. And the Eleventh Circuit has never applied it to find a federal litigant exempt from the preclusive effect of a prior state court decision.

Plaintiffs) to pursue state law remedies as a precondition for suing in federal court. Indeed, Plaintiffs appear to have thought the same thing, since they filed this suit well before Rinderle completed her FDA appeal. [*See* Doc. 95 at 5 n. 5.] Only when Plaintiffs were met with Defendants' second motion to dismiss did they first claim they were trying to exhaust administrative remedies as a prerequisite to this suit.

Plaintiffs' attempt to invent an exhaustion requirement rests on a misreading of precedent. Doubling down on the same mistake they made in opposing Defendants' second motion to dismiss [*see* Doc. 92 at 14–15], Plaintiffs again cite *McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994), to argue that Rinderle had to complete her FDA appeal before filing suit here. [Doc. 95 at 1–2 n.2.] But *McKinney* said nothing of the sort. To the contrary, the Eleventh Circuit made clear that "exhaustion is irrelevant to our decision and finds no mention in the opinion." *Id.* at 1564 n.20. And as *Cotton v. Jackson* later explained, *McKinney's* directive is not an exhaustion requirement, but a recognition that a procedural due process claim does not even arise unless state remedies are inadequate. 216 F.3d 1328, 1331 n.2 (11th Cir. 2000).

Plaintiffs' reliance on *McKinney* therefore badly mischaracterizes its holding. The case stands only for the principle that a due process claim is not viable where adequate state remedies exist. But it does not require a plaintiff to exhaust those remedies before suing in federal court. *See Cotton*, 216 F.3d at 1331 n.2. By contrast,

*Fields* allowed a *Jennings* reservation only because *Williamson County's* now-overruled takings doctrine imposed an exhaustion mandate. No such mandate applies here. And Plaintiffs cannot manufacture one by misreading *McKinney*.

Finally, even if *Fields* applied, Plaintiffs still did not make a proper reservation in the state court proceedings anyway. More recent caselaw confirms that a *Fields/Jennings* reservation "must be set forth clearly, on the record, and at the outset of the state court claim." *Saboff v. St. John's River Water Mgmt. Dist.*, 200 F.3d 1356, 1360 (11th Cir. 2000). A plaintiff may not reserve a federal claim after the state court has entered judgment. *See Treister v. City of Miami*, 893 F. Supp. 1057, 1071 (S.D. Fla. 1992), *aff'd sub nom. Triester v. Suarez*, 56 F.3d 1389 (11th Cir. 1995). Rinderle did not try to reserve her due process claim until after the superior court entered judgment on that claim. By then, it was too late. And asking for a stay now will not retroactively undo that choice.

\*\*\*

At bottom, Plaintiffs are asking this Court to stay a federal case on the basis of doctrines that neither apply to their claims nor justify delay. *England*, *Allen*, *Migra*, and *Sam Remo* foreclose relitigation of a federal issue already resolved by the state court, and *Fields* permits reservation only when federal law mandates exhaustion—a condition that does not exist here. Having already lost their due process challenge in state court, Plaintiffs cannot revive it through a stay motion

-14-

dressed up in the procedural language of "reservation." Their motion is just a means to relitigate a decided claim. It should be denied.

## CONCLUSION

For the reasons discussed, the Court should deny Plaintiffs' Motion to Stay.

This 22nd day of August, 2025.

/s/ Brandon O. Moulard
Brandon O. Moulard
Georgia Bar No. 940450
Bennett D. Bryan
Georgia Bar No. 157099
Jeffrey R. Daniel
Georgia Bar No. 949075

PARKER POE ADAMS & BERNSTEIN LLP
1075 Peachtree Street NE, Suite 1500
Atlanta, GA 30309
Telephone: 678.690.5750
Facsimile: 404.869.6972
brandonmoulard@parkerpoe.com
bennettbryan@parkerpoe.com
jeffdaniel@parkerpoe.com

*Counsel for Defendants*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing was prepared using Times New Roman font, 14-point type, which is one of the font and print selections approved by the Court in L.R. 5.1(C).

This 22nd day of August, 2025.

                                                  */s/ Brandon O. Moulard*
                                                  Brandon O. Moulard
                                                  Georgia Bar No. 940450
                                                  Bennett D. Bryan
                                                  Georgia Bar No. 157099
                                                  Jeffrey R. Daniel
                                                  Georgia Bar No. 949075

                                                  PARKER POE ADAMS & BERNSTEIN LLP
                                                  1075 Peachtree Street NE, Suite 1500
                                                  Atlanta, GA 30309
                                                  Telephone: 678.690.5750
                                                  Facsimile: 404.869.6972
                                                  brandonmoulard@parkerpoe.com
                                                  bennettbryan@parkerpoe.com
                                                  jeffdaniel@parkerpoe.com

                                                  *Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I certify that I have this day I filed this DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO STAY with the Clerk of Court using the CM/ECF electronic filing system, which will send an electronic copy to all counsel of record.

This 22nd day of August, 2025.

/s/ *Brandon O. Moulard*
Brandon O. Moulard
Georgia Bar No. 940450
Bennett D. Bryan
Georgia Bar No. 157099
Jeffrey R. Daniel
Georgia Bar No. 949075

PARKER POE ADAMS & BERNSTEIN LLP
1075 Peachtree Street NE, Suite 1500
Atlanta, GA 30309
Telephone: 678.690.5750
Facsimile: 404.869.6972
brandonmoulard@parkerpoe.com
bennettbryan@parkerpoe.com
jeffdaniel@parkerpoe.com

*Counsel for Defendants*